IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARNA J. HUBBARD                                                    PLAINTIFF

VS.                              CIVIL NO. 06-3062

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

## MEMORANDUM OPINION

Marna Hubbard ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security

Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner

of the Social Security Administration denying her applications for disability insurance benefits

("DIB") under Title II of the Act.

### Background:

The application for DIB now before this court was filed on June 3, 2002, alleging an inability

to work since May 19, 2002, due to shoulder and back problems. (Tr. 54, 83).  An administrative

hearing was held on August 22, 2003, after which, the Administrative Law Judge ("ALJ") issued a

partially favorable decision finding plaintiff disabled as of October 1, 2003. (Tr. 8-22).  From May

19, 2002, until September 30, 2003, the ALJ determined that plaintiff had the residual functional

capacity ("RFC") to perform the exertional and non-exertional requirements of light level work on

a sustained basis. (Tr. 21).  As such, he determined that plaintiff could return to her past relevant

work ("PRW") as a hotel/motel housekeeper. (Tr. 21).

_____

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne
B. Barnhart as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 57 years old and possessed a high school education. (Tr. 12, 294). The record reveals that she had past relevant work ("PRW") as factory worker and a housekeeper at a hotel/motel. (Tr. 12, 128, 294-301). In fact, plaintiff testified that she continued to work part-time as a hotel/motel housekeeper. (Tr. 319).

On August 31, 2006, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 12, 13).[2]

**Evidence Presented:**

The record reveals that plaintiff underwent arthroscopic surgery on her left shoulder on December 8, 1998, due to impingement syndrome. (Tr. 232-235). However, plaintiff failed to progress following surgery, due to complications caused by adhesive capsulitis. (Tr. 263-264).

On February 8, 1999, plaintiff continued to have problems with limited mobility in her shoulder. (Tr. 263). Dr. Thomas Knox determined that it would be best to proceed with an examination under anesthesia and a possible repeat diagnostic scope. (Tr. 263).

On February 12, 1999, Dr. Knox performed a second arthoscopy of the left shoulder with manipulation to free her adhesions. (Tr. 227-231). By February 18, 1999, plaintiff was doing great and Dr. Knox released her to return to work. (Tr. 263). On March 1, he directed her to continue

---

[2]While the Court notes that plaintiff did file a brief, the sole issue raised in said brief is not relevant to the instant case. Plaintiff has not alleged a mental impairment and the medical evidence does not show that plaintiff suffers from any mental limitations.

AO72A
(Rev. 8/82)

stretching. Overall, she was doing well, but reported some numbness in the small finger, which was noted to be primarily nocturnal. Dr. Knox prescribed an elbow pad to help relieve some of the pressure. (Tr. 263).

On April 22, 1999, plaintiff continued to experience paresthesias in her small and ring finger, consistent with ulnar neuropathy. (Tr. 262). Although plaintiff's nerve conduction studies were normal, her F-wave was abnormal, consistent with an above the elbow problem. As such, Dr. Knox referred her to a neurologist. (Tr. 262).

On May 10, 1999, plaintiff was evaluated by neurologist Dr. Bruce Robbins. (Tr. 178-187). She complained of numbness in her left upper extremity and episodic vertigo. Nerve conduction studies were within normal limits, but an EMG needle examination revealed neurogenic changes for muscles innervated primarily from the C7 and C8 levels. (Tr. 289). This was seen in both the radial and ulnar innervated muscles. Accordingly, plaintiff was scheduled for a cervical MRI. (Tr. 182). The MRI showed evidence of a mild disk bulge at the C6-7 level. (Tr. 172, 288). However, it did not appear to impinge upon either the spinal cord or the exiting nerve roots. (Tr. 172). Dr. Robbins' impression was atypical numbness in the left upper extremity suggestive of either compression neuropathy or a possible radiculopathy. (Tr. 262).

On October 21, 1999, plaintiff followed-up with Dr. Knox regarding her left adhesive capsulitis and cervical radiculopathy. (Tr. 261). She indicated that she was doing very well but reported some concern that she was developing similar symptoms in her right arm. Dr. Knox noted some mild tightness in the shoulder, but no other abnormalities. (Tr. 261).

3

On November 22, 1999, an MRI of her right shoulder showed marked tendinosis of the cuff with a questionable tear, acromioclavicular joint spurring, and degenerative disease. (Tr. 176). In January 2000, Dr. Knox performed arthroscopic superior capsulorrhaphy and arthroscopic abrasion acromioplasty on her right shoulder. (Tr. 211-221). At follow-up appointments with Dr. Knox, plaintiff reported continued pain and soreness, especially with overhead stretching and pulley exercises. (Tr. 259).

In February 2000, plaintiff fell and injured her right shoulder. (Tr. 259). Although an examination revealed a full range of motion and no ecchymosis, plaintiff repeatedly complained of soreness and discomfort in the acromial area. (Tr. 258). Dr. Knox was of the opinion that plaintiff's soreness was related to her work and the constant movement of her arms required for assembly work. (Tr. 258).

On October 30, 2000, plaintiff followed-up with Dr. Knox and complained of continued pain and soreness in her shoulder. (Tr. 257). However, an examination revealed a full range of motion. Dr. Knox opined that plaintiff's discomfort was likely due to the overhead work she was performing. Therefore, he put a permanent restriction on her activities of no overhead work. Dr. Knox also voiced his belief that plaintiff was suffering from impingement. (Tr. 257).

On June 28, 2001, plaintiff was doing well. (Tr. 283). She did, however, report continued discomfort and some popping when she raised her arm. An examination revealed a normal range of motion and very benign portals. As such, Dr. Dennis Luter asked her not to do any overhead work. (Tr. 283). By August 6, 2001, plaintiff reported improvement in her symptoms. Dr. Luter

4

noted a good range of motion and strength. (Tr. 283). However, on September 7, 2001, plaintiff reported constant pain. At this time, Dr. Luter noted only fair strength. He opted to proceed with an impairment rating. (Tr. 283).

On December 11, 2002, Dr. Knox diagnosed plaintiff with recurrent impingement syndrome of the right shoulder. (Tr. 257). He ordered a repeat MRI scan to see if there had been any rotator cuff changes. (Tr. 257).

On May 1, 2001, a venus doppler ultrasound of plaintiff's right lower extremity was normal. (Tr. 210). As such, plaintiff was diagnosed with cellulitis of the right leg. (Tr. 210).

Plaintiff fell and re-injured her shoulder. She underwent arthroscopic surgery and arthroscopic superior capsulorrhaphy utilizing one contact implant on June 19, 2001. (Tr. 197-208, 257). Progress notes reveal some progress following surgery with a good range of motion and strength. (Tr. 256). However, plaintiff continued to report discomfort.

On November 12, 2001, plaintiff reported continued soreness in both shoulders. (Tr. 255). Dr. Knox diagnosed her with residual bursitis and recommended that she perform stretching exercises daily. He also prescribed Vioxx. (Tr. 255).

On January 5, 2002, plaintiff sought emergency treatment for chronic back pain. (Tr. 187-191). She reported a history of prior back surgery and indicated that her pain was near the site of her scar. Plaintiff also stated that she had not been taking the Celebrex regularly. A physical exam revealed mild tenderness and some spasm on the left side. Plaintiff was given injections of Norflex and Toradol and advised to follow-up with her treating doctor. (Tr. 187-191).

AO72A
(Rev. 8/82)

On January 14, 2002, plaintiff's shoulder was still bothersome and she reported "catching sensations." (Tr. 255). Dr. Knox was of the opinion that no further surgical intervention would be of benefit to plaintiff. (Tr. 255).

Plaintiff underwent a general physical examination on August 30, 2002. (Tr. 236-243). She reported that she was unable to work due to pain in her shoulders and lower back. (Tr. 236). Plaintiff also stated that she experienced difficulty standing and walking for more than 30 minutes. (Tr. 236). A physical exam showed a normal range of motion in plaintiff's cervical and lumbar spine with no evidence of muscle spasm. (Tr. 239). Plaintiff also had a normal range of motion in her shoulders, although some pain was noted. (Tr. 239). No muscle weakness, atrophy, or sensory abnormalities were noted. (Tr. 240). However, a circulatory examination revealed an absent radial pulse on the right. An x-ray of her lumbar spine did reveal degenerative disc disease at the L5-S1 level. Further, plaintiff's gait was normal, and she was able to heel-toe walk and squat and rise without difficulty. (Tr. 241). X-rays of her shoulders were normal and showed no evidence of fractures, dislocations, or arthritis. However, x-rays of her lumbar spine indicated that the L5-S1 disk space was narrowed by 80%. Dr. K. Simon Abraham diagnosed plaintiff with degenerative disk disease and pain in both shoulders. (Tr. 242). He determined that plaintiff was a strong woman and could sit, stand, walk, and carry objects, as well as hear and speak. Plaintiff also reported that she was not taking any prescription pain medication, only over-the-counter Ibuprofen. (Tr. 243).

On September 17, 2002, Mark L. Ungerank, a chiropractor, stated that he had treated plaintiff since March 27, 2001, for neck, shoulder, and lower back pain. (Tr. 254). He indicated that plaintiff

6

had quit her job because the assembly line work was too much for her.  Dr. Ungerank reported that x-rays of her cervical spine had showed degenerative changes between the C6-C7 level through the T6-T12, as well as the L4-5 and L5-S1 levels.  He was of the opinion that plaintiff could not sit for over 15 minutes without getting up and moving around and should not stand in one place over 5 minutes without moving around.  As such, Dr. Ungerank concluded that plaintiff was disabled and not able to work.  (Tr. 254).

On August 13, 2003, plaintiff told Dr. Knox that she had recently been treated in the ER for shoulder pain.  (Tr. 282).  A physical exam, however, revealed an excellent range of motion.  Therefore, Dr. Knox prescribed Sulindac and asked her to return in two months.  (Tr. 282).

On September 23, 2003, plaintiff underwent a formal residual functional capacity evaluation to determine her current functional abilities.  (Tr. 277-280). She reported limitations due to lower back pain and shoulder pain.  (Tr. 277).  The examiner noted minimal complaints with light work. He concluded that plaintiff was able to sit continuously for up to 60 minutes, stand for 45 minutes before needing to sit down, sit for 4 hours and /or walk for about 4 hours.  However, every 30 minutes for 1-2 minutes, plaintiff needed to include periods of walking around and she needed a job that would allow a sit/stand option.  A physical exam showed minimal to moderate limitation in the lumbar range of motion, and a 25 percent decrease in flexation, abduction, and rotation of her shoulder.  (Tr. 278).  It was determined that plaintiff was capable of light level work activity with a sit/stand option, involving no twisting and no overhead reaching.  (Tr. 280).

7

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her

disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

At issue in this case is whether plaintiff was disabled between May 19, 2002, plaintiff's alleged onset, and September 30, 2003, the last day on which the ALJ found plaintiff not disabled.  Therefore, we will not evaluate the medical evidence reflecting plaintiff's condition on or after October 1, 2003.

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency,

and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the United States Court of Appeals for the Eighth Circuit  recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

As previously mentioned, the medical evidence reveals that plaintiff has been treated for problems involving both shoulders and her lower back.  However, in spite of these impairments, plaintiff has continued to work part-time as a hotel/motel housekeeper.  *See* 20 C.F.R. §§ 404.1571, 416.971; *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that ability to perform part-time work belied plaintiff's claim of disability).  When plaintiff requested an administrative hearing, she indicated that she was working at a Best Western hotel and had been doing so since September of 2002.  (Tr. 128).  *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years).  Then, at the administrative hearing, plaintiff testified that she continued to work 15-25 hours per week as a housekeeper at a hotel.  (Tr. 319).

10

Further, plaintiff was receiving unemployment compensation during this time frame. In order to receive unemployment benefits, a claimant must state that they are capable of working. (Tr. 325). This Circuit has held that the receipt of unemployment benefits is inconsistent with a claim of disability. *See Johnson v. Chater*, 108 F.3d 178, 180-181 (8th Cir. 1997); *Salts v. Sullivan*, 958 F.2d 840, 846 n. 8 (8th Cir.1992). Coupled with the fact that plaintiff continued to maintain employment, we cannot say that the ALJ erred in concluding that plaintiff's subjective complaints were not fully credible.

It is also significant to note that plaintiff's impairments did not require prescription strength pain medication. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). On June 15, 2002, plaintiff reported that she was taking only Tylenol for her pain, and that she did not have any side effects from this medication. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). In August 2003, plaintiff also told Dr. Abraham that she was not taking any prescription pain medication, only over-the-counter Ibuprofen. (Tr. 243). Accordingly, we cannot say that plaintiff's impairments were as severe as alleged.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her supplemental interview outline, plaintiff reported an ability to do the laundry, wash dishes, change the sheets, take out the trash, shop for groceries, prepare meals, pay bills, drive,

11

watch TV, listen to the radio, knit, embroider, and visit friends and relatives.  (Tr. 118-119).  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We have also reviewed the ALJ's determination that plaintiff maintained the RFC to perform a full range of light work.  (Tr. 21).  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence."  *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  The United States Court of Appeals for the Eighth Circuit

12

has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, a general physical examination, plaintiff's subjective complaints, and her medical records. On November 26, 2002, Dr. Alice Davidson, a consulting doctor, reviewed plaintiff's medical records and completed an RFC assessment. (Tr. 266-275). She concluded that plaintiff could perform medium work involving only occasional stooping, crouching, and overhead work. (Tr. 267-275).

While we are cognizant of the fact that Dr. Knox placed a permanent restriction on plaintiff's activities of no overhead work, we also note that she has continued to work as a motel/hotel housekeeper, which does require some overhead reaching. In addition, although Dr. Ungerank concluded that plaintiff was disabled and not able to work, he is a chiropractor who treated plaintiff

13

for a very limited time period.  (Tr. 254).  As a chiropractor, Dr. Ungerank is not an acceptable medical source.  Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.  20 C.F.R. §§ 404.1513(a), 416.913(a) (2007).  Therefore, his opinion in not entitled to controlling weight.  Likewise, the fact that he treated plaintiff for a short period of time entitles his opinion to less weight.

While we note that Dr. Knox permanently restricted plaintiff to performing no overhead work, we also note that plaintiff continued to work as a hotel/motel housekeeper.  The Eighth Circuit has held that a plaintiff will be found not disabled if he/she can perform the actual functional demands of his past work as he/she actually performed that work or as it is generally performed in the national economy.  *See Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir. 1994).  As such, we find substantial evidence to support the ALJ's finding that plaintiff could perform a full range of light work and return to her PRW as a hotel/motel housekeeper.

We express some sympathy for the claimant despite our ruling in this case.  Although the claimant may suffer serious back and shoulder pain that prevents her from working without discomfort, she has continued to work despite her alleged pain.  We recognize that if the claimant had decided not to work, she might have qualified for disability benefits because she may have been able to prove that she was incapable of engaging in substantial gainful activity for at least twelve months.  *See Nettles v. Sullivan*, 956 F.2d 820, 823 (8th Cir. 1992).  However, as the evidence stands, she has failed to do so.

14

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>14th</u> day of November 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

15